IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

NAOMI MCMILLIAN o/b/o A.T.F.,       )
                                    )
            Plaintiff,              )
                                    )
      v.                            )       CIVIL ACTION NO. 2:11CV344-WKW
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
            Defendant.              )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Naomi McMillian o/b/o A.T.F.[1] brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her son's application for Supplemental Security Income under the Social Security Act. Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145

---

[1] The court refers to A.T.F. as the "plaintiff" in this recommendation.

(11th Cir. 1991). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Factual findings that are supported by substantial evidence must be upheld by the court. See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence."). The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

### Child Disability

"Federal regulations set forth the process by which the SSA determines if a child is disabled and thereby eligible for disability benefits." Shinn ex rel. Shinn v. Commissioner of Social Sec., 391 F.3d 1276, 1278 (11th Cir. 2004) (citing 42 U.S.C. § 1382c(a)(3)(C)(I) and 20 C.F.R. § 416.906). "The process begins with the ALJ determining whether the child is 'doing substantial gainful activity,' in which case she is considered 'not disabled' and is ineligible for benefits." Id. (citing 20 C.F.R. §§ 416.924(a), (b)). "The next step is for the

ALJ to consider the child's 'physical or mental impairment(s)' to determine if she has 'an impairment or combination of impairments that is severe.'" Id. (citing 42 U.S.C. §§ 416.924(a), (c)). "For an applicant with a severe impairment, the ALJ next assesses whether the impairment 'causes marked and severe functional limitations' for the child." Shinn, 391 F.3d at 1278  (citing 20 C.F.R. §§ 416.911(b), 416.924(d).)  This determination is made according to objective criteria set forth in the Code of Federal Regulations (C.F.R.). As the Eleventh Circuit has explained,

> [t]he C.F.R. contains a Listing of Impairments ["the Listings", found at 20 C.F.R. § 404 app.] specifying almost every sort of medical problem ("impairment") from which a person can suffer, sorted into general categories. See id. § 416.925(a). For each impairment, the Listings discuss various limitations on a person's abilities that impairment may impose. Limitations appearing in these listings are considered "marked and severe." Id. ("The Listing of Impairments describes ... impairments for a child that cause[ ] marked and severe functional limitations.").

> A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations "meet[ ], medically equal[ ], or functionally equal[ ] the [L]istings." Id. § 416.911(b)(1); see also §§ 416.902, 416.924(a). A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations "are at least of equal medical significance to those of a listed impairment." Id. § 416.926(a)(2).

Id. at 1278-79. "Finally, even if the limitations resulting from a child's particular impairment[s] are not comparable to those specified in the Listings, the ALJ can still conclude that those limitations are 'functionally equivalent' to those in the Listings. In making this determination, the ALJ assesses the degree to which the child's limitations

interfere with the child's normal life activities. The C.F.R. specifies six major domains of life:

> (i) Acquiring and using information;
>
> (ii) Attending and completing tasks;
>
> (iii) Interacting and relating with others;
>
> (iv) Moving about and manipulating objects;
>
> (v) Caring for [one]self; and
>
> (vi) Health and physical well-being."

Shinn, 391 F.3d at 1279 (citing 20 C.F.R. § 416.926a(b)(1)). "The C.F.R. contains various 'benchmarks' that children should have achieved by certain ages in each of these life domains." Id. (citing 20 C.F.R. §§ 416.926a(g)-(l)). "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked' limitations in two of the domains [above], or an 'extreme' limitation in one domain." Id. (citing 20 C.F.R. § 416.926a(d) and § 416.925(a)).[2]

### The ALJ's Decision

In a decision issued on February 26, 2010, the ALJ found that the plaintiff – an older

---

[2] " A 'marked' limitation is defined as a limitation that 'interferes seriously with [the] ability to independently initiate, sustain, or complete activities,' and is 'more than moderate.'" Henry v. Barnhart, 156 Fed.Appx. 171, 174 (11th Cir. 2005) (unpublished) (citing 20 C.F.R § 416.926a(e)(2)(I)). "An 'extreme' limitation is reserved for the 'worst limitations' and is defined as a limitation that 'interferes very seriously with [the] ability to independently initiate, sustain, or complete activities,' but 'does not necessarily mean a total lack or loss of ability to function.'" Id. (citing 20 C.F.R. § 416.926a(e)(3)(I)).

4

infant when the application was filed and a preschooler at the time of the ALJ's decision – suffered from the severe impairment of asthma, but that he does not have an impairment or combination of impairments that meets, medically equals, or functionally equals a listed impairment. The ALJ determined that the plaintiff has "less than marked" limitations in the domains of "Moving About and Manipulating Objects" and "Health and Physical Well-Being" and no limitation in the remaining domains. The ALJ concluded, accordingly, that the plaintiff has not been disabled since March 19, 2008, the protective filing date of his application. (R. 15-31). The Appeals Council denied plaintiff's request for review on March 17, 2011, and, thus, the decision of the ALJ stands as the final decision of the Commissioner.

## Plaintiff's Contentions

Plaintiff argues that the Commissioner's decision is due to be reversed because: (1) at step two of the evaluation, the ALJ failed to find that plaintiff's chronic otitis media is a severe impairment; (2) the ALJ erred at step three by failing to find that the combination of plaintiff's impairments rise to listing-level severity; and (3) the ALJ's credibility determination is flawed. (Plaintiff's brief, Doc. # 10, p. 3).[3]

## Plaintiff's Chronic Otitis Media

Plaintiff contends that the ALJ erred by failing to find his chronic otitis media to be

---

[3] Plaintiff also argued that the decision should be reversed because the administrative record the Commissioner provided to plaintiff did not include the transcript of the administrative hearing held on February 8, 2010. (Doc. # 10, p. 3). However, the Commissioner provided a supplemental transcript to plaintiff's counsel thereafter, and plaintiff's counsel had the opportunity to raise any issues presented by that evidence in his reply brief. (See Doc. # 12, Commissioner's brief, p. 7; Doc. # 16, Plaintiff's Reply Brief, p. 1). The Commissioner initially filed an incomplete transcript in this court, also, but filed the supplemental transcript on August 6, 2012. (Doc. # 13, 18).

"severe."[4]  The Commissioner responds that there is no evidence that plaintiff's chronic ear

infections resulted in any significant functional limitations, and that even if the ALJ erred by

failing to classify the impairment as "severe," the error is harmless because ALJ proceeded

beyond step two of the sequential analysis.  The ALJ discussed the evidence of plaintiff's

treatment for chronic otitis media. (R. 20).  He also summarized the testimony of the medical

expert witness, Dr. Durham, including Dr. Durham's reference to plaintiff's history of otitis

media requiring three sets of tubes.  (R. 22; see also R. 540 (Dr. Durham's February 2010

testimony that plaintiff "has a past history of recurrent otitis media in '06, '07, '08, and '09,

but tapering off some in the last two years" and that he is "status post three sets of tubes,

adenoidectomy and tonsillectomy back in '07, and then last year he had his third set of

tubes")).  The ALJ noted that the state agency non-examining physicians had identified

"chronic otitis media" and "a history of frequent ear infections" as one of plaintiff's

---

[4] Plaintiff cites evidence that Dr. Roy diagnosed otitis media  eleven times between March 2006 and
August 2007 (Doc. # 10, p. 5) and on four occasions in the fourteen months between February 2008 and April
2009 – February 20, 2008; October 8, 2008; February 2, 2009; and April 21, 2009 (id., p. 6).  He further
points to evidence that Dr. McRae of Southeastern ENT inserted middle ear ventilation tubes and performed
an adenoidectomy in January 2007 and, in October 2007, performed a tonsillectomy and replaced the middle
ear ventilation tubes. (Id., pp. 6-7; see Exhibits 5F, 8F, 9F).  Plaintiff also notes his treatment by Dr. McRae
again in May 2009.  (Id., p. 7; see Exhibits 9F, 10F).  At that time, Dr. McRae observed that plaintiff "did
fine for over a year" after his repeat ventilation tubes in October of 2007 but that "his mother estimates he's
had at least four ear infections [since November 2008] despite being on appropriate antibiotic therapy."
(R. 392).  Dr. McRae admitted plaintiff for repeat ventilation tube placement on May 12, 2009. (R. 390-92).
Eight days after admission, Dr. McRae examined plaintiff and found both ears to be "[n]ormal with dry,
patent ventilation tubes in place."  He assessed "Normal post-op ear exam, normal hearing." (R. 389).  The
record includes no evidence of further treatment by Dr. McRae.  The administrative record includes treatment
notes from other providers through late January 2010, but no further diagnoses of or treatment for otitis
media after the surgery in May 2009. (See Exhibits 12F, 13F, 15F).  Plaintiff's present application for
benefits was filed on March 19, 2008 (R. 110-12; 135-37)(protective filing date).  While plaintiff's previous
medical history is relevant (see 20 C.F.R. § 404.916(d)), the period before the ALJ for adjudication began
on March 19, 2008.

impairments.  (R. 21).[5]  Despite the ALJ's discussion of plaintiff's treatment for chronic otitis media, plaintiff argues in reply that "the ALJ's decision lacks any discussion to show that ATF's recurrent serous otitis media was actually considered during his meets/medically equals determination."  (Doc. # 16, p. 3)(citing R. 18).

The evidence of record reveals that plaintiff "did fine for over a year" after his second placement of ear tubes in October 2007, that he had four ear infections in the several months between October 2008 and May 2009, that these infections responded to antibiotic treatment, and that plaintiff had no further treatment for otitis media after replacement of ventilation tubes in May 2009.  (See n. 4, *supra*; see also Exhibits 9F, 10F, 12F, 13F and 15F).  On this record, the court cannot conclude that the ALJ erred by failing to find plaintiff's chronic otitis media to be severe.  Even assuming that he did, however, any such error was harmless.  Because the ALJ found that the plaintiff suffered from the "severe" impairment of asthma, he proceeded beyond step two of the sequential analysis.[6]  The ALJ was obligated to consider plaintiff's non-severe impairments in combination with his severe impairment of asthma in

---

[5] These physicians did not offer an opinion as to whether plaintiff's chronic otitis media is, standing alone, a "severe" impairment.  Instead, they both concluded that plaintiff's "combination of impairments" – including his ear infections and asthma – is "severe."  (R. 262-63 (November 2007 opinion of Dr. Phillips); R. 352-53 (May 2008 opinion of Dr. Sullivan)).

[6] See 20 C.F.R. § 416.924(a)("We follow a set order to determine whether you are disabled.  If you are doing substantial gainful activity, we will determine that you are not disabled and not review your claim further.  If you are not doing substantial gainful activity, we will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe.  If your impairment(s) is not severe, we will determine that you are not disabled and not review your claim further. *If your impairment(s) is severe, we will review your claim further to see if you have an impairment(s) that meets, medically equals, or functionally equals the listings.*  If you have such an impairment(s) and it meets the duration requirement, we will find that you are disabled.  If you do not have such an impairment(s) or if it does not meet the duration requirement, we will find that you are not disabled.")(emphasis added).

further evaluating his claim.  See Jones v. Dept. of Health and Human Services, 941 F.2d 1529, 1533 (11th Cir. 1991).  Despite plaintiff's argument to the contrary, the ALJ's decision sufficiently indicates that he did so.

In Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002), the Eleventh Circuit held that an ALJ's statement that "'the medical evidence establishes that [Wilson] had [several injuries] which constitute a 'severe impairment,' but that he did not have an impairment *or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4'" was "evidence that he considered the combined effects of Wilson's impairments." (alterations and emphasis in original).  The Eleventh Circuit rejected the district court's determination that the ALJ had failed to discuss the cumulative effects of the plaintiff's impairments.  In the present case, the ALJ found that the plaintiff does not have "an impairment *or combination of impairments* that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]"  (R. 18, Finding no. 4)(emphasis added).  He further stated, "No medical expert has concluded that the claimant's *impairments* meet or equal a listed impairment.  The claimant's *impairments*, *singularly and in combination*, have been compared to all listed impairments." (R. 18)(emphasis added).  The ALJ's discussion indicates that he considered "impairments" (plural) at this step, even though he found only one impairment – asthma – to be "severe." (See  R. 18, Finding No. 3).  Additionally, while the ALJ did not mention otitis media or ear infections expressly in his "meets or equals" analysis, he cited exhibits including medical

evidence of plaintiff's diagnosis and treatment for this impairment. (See R. 18 (citing Exhibits 1F[7], 2F[8], 7F[9], 8F, and 9F[10])). One of the cited exhibits, Exhibit 8F, pertains *only* to plaintiff's hospital admission for the tonsillectomy and second middle ear tube placement by Dr. McRae. (R. 358-69).[11] The ALJ discussed the evidence of plaintiff's ear infections in analyzing functional equivalence as he proceeded with the analysis of plaintiff's claim. (See R. 20-22, 28). Under these circumstances – even assuming that plaintiff's chronic otitis media rose to the level of a "severe" impairment during the period at issue – the ALJ's failure to identify it as such at step two does not constitute reversible error. See Perry v. Astrue, 280 Fed. Appx. 887, 894 (11th Cir. 2008)(unpublished opinion)(explaining that the ALJ did not err by not specifically identifying the severe impairments at step two because he enumerated and evaluated all the alleged impairments and symptoms in determining the claimant's RFC); Nigro v. Astrue, 2008 WL 360654, at *2 (M.D. Fla. 2008)(noting that the ALJ did not err at

---

[7] Exhibit 1F includes records from Troy Regional Medical Center for plaintiff's admission in January 2007 for adenoidectomy and ear tube placement by Dr. McRae, as well as his admission in August 2007 for a respiratory exacerbation. (R. 167-91).

[8] Exhibit 2F consists of the records of plaintiff's treatment by his primary care provider at Sarha Doctors Center between March 2006 and September 2007, including his treatment for chronic otitis media. (R. 192-261; see R. 193, "Problem List").

[9] Exhibit 7F is the "Childhood Disability Evaluation Form" completed by non-examining state agency physician Dr. Sullivan on May 8, 2008. Dr. Sullivan lists plaintiff's history of frequent ear infections as one of his impairments (along with asthma), and concludes that plaintiff does not have an impairment or combination of impairments that meets, medically equals or functionally equals the listings. (R. 352-57).

[10] Exhibit 9F includes the records for plaintiff's admission to Troy Regional Medical Center in August 2007 (see n. 6, *supra*), October 2007 (see n. 9, *supra*) and, also, in May 2009 for his third placement of ear tubes by Dr. McRae. (R. 370-88).

[11] The records refer to plaintiff's asthma, as a matter of medical history, but Exhibit 8F documents plaintiff's admission for ENT surgery.

step two by not making an express determination regarding the severity or non-severity of the claimant's impairments because he thoroughly discussed the evidence relating to all of the claimant's impairments and took them into account in determining the claimant's RFC); McKiver v. Barnhart, 2005 WL 2297383, at *11 (D. Conn. 2005)(explaining that the failure to make explicit determination at step two is, at most, a harmless error when the ALJ does not screen out the plaintiff's claim at step two, but rather continues with the five-step sequential process); Street v. Barnhart, 340 F. Supp. 2d 1289, 1293-94 (M.D. Ala. 2004), *affirmed*, 133 Fed. Appx. 621 (11th Cir. 2005)(ALJ's failure to list low IQ as severe impairment was harmless error where he referred to plaintiff's "borderline intellectual functioning" in his decision and considered plaintiff's "severe and not severe impairments" in combination in subsequent analysis).

## Listing 103.03

Plaintiff next contends that the ALJ erred at step three of the evaluation by failing to find that the combination of plaintiff's impairments rose "to listing level severity." (Doc. # 10, p. 8).[12] Plaintiff argues, first, that the ALJ considered only his asthma at step three.

---

[12] This general argument could be read to challenge the ALJ's finding that plaintiff "does not have an impairment or combination of impairments that functionally equals the listings" (see R. 19, Finding No. 5). However, plaintiff's opening brief makes clear that he challenges the ALJ's conclusion that his combination of impairments does not *medically* equal Listing 103.03. See Plaintiff's brief, Doc. # 10, p. 11 ("As such, Ms. McMillian asks ths Honorable Court to find that the combination of ATF's medically determinable impairments medically equal Listing 103.03.")(footnote omitted); id., p. 13 (As such, Ms. McMillian respectfully requests that this Honorable Court determine that the combination of ATF's medically determinable impairments medically equals Listing 103.03."). In his reply brief, plaintiff confirms that he raises no argument regarding the "functionally equals" prong of the disability analysis. (Plaintiff's reply brief, Doc. # 16, p. 6 n. 4).

He quotes the second half of the ALJ's analysis under his finding that the claimant "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments .. ." (R. 18), in which the ALJ references plaintiff's severe impairment of asthma and his "'exacerbations involving upper respiratory infections and asthma.'" (Doc. # 10, p. 8). The listing most likely to apply in this case is the one quoted extensively and argued by plaintiff, Listing 103.03 ("*Asthma*"). (<u>See</u> Plaintiff's brief, Doc. # 10, pp. 8-10; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 103.03). The court does not read the ALJ's analysis to demonstrate that he failed to consider plaintiff's condition as a whole, simply because he referred expressly to plaintiff's severe impairment of asthma and did not also refer to his "chronic otitis media." As noted above, the ALJ found that plaintiff did not have "an impairment *or combination of impairments* that meets or medically equals" a listed impairment. In the first half of the paragraph following this finding, the ALJ stated that "[t]he claimant's impairments, *singularly and in combination,* have been compared to all listed impairments." (R. 18)(emphasis added). Additionally, as also noted above, the ALJ stated in his "meets or equals" discussion that "[n]o medical expert has concluded that the claimant's impairments meet or equal a listed impairment." (R. 18). All of the medical experts who rendered an opinion on this issue considered plaintiff's combination of impairments – all also expressly identifying his ear infections/otitis media – and concluded that plaintiff's impairments do not meet or medically equal a listed impairment. (<u>See</u> Exhibits 3F, 7F, and R. 540).

Next, plaintiff points to the ALJ's citation of several exhibits of record – but not *all* of the exhibits – as evidence that the ALJ did not consider the entire record in his "meets or medically equals" analysis.[13]  While the ALJ is required to consider the entire record, he is not required to cite every exhibit at every step of the sequential analysis.  It is clear from the ALJ's decision that he was well aware of and considered the other evidence of record; his failure to cite every exhibit in his "meets or medically equals" analysis does not demonstrate error.  Cf. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)(there is "no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" so long as the ALJ's decision demonstrates that the ALJ considered the claimant's condition as a whole).

Finally, plaintiff argues that certain specific medical evidence of record demonstrates that the ALJ erred by failing to conclude that plaintiff's combination of impairments rise to listing level severity.  (Doc. # 10, pp. 11-13).  Plaintiff argues that the cited evidence of his asthma treatment, "coupled with the significant medical treatment required for chronic otitis media, including three surgical procedures, presents substantial evidence that the combination of ATF's medically determinable impairments rise to listing level severity."

---

[13]  In his reply, plaintiff argues that "[t]he ALJ even cited which exhibits of record played a role in his meets and/or medically equals determination (Tr. 18).  The ALJ's failure to consider ATF's recurrent serous otitis media during his meets and/or equals determination constitutes legal error in which prevents his administrative findings from enjoying the support of substantial evidence."  (Doc. # 16, pp. 3-4).  As discussed above with regard to plaintiff's step two argument, review of the particular exhibits cited by the ALJ at this point in his decision demonstrates that the ALJ did not – contrary to plaintiff's argument – limit his consideration to plaintiff's asthma in the "meets or medically equals" analysis.

(Doc. # 10, pp. 12-13).[14]   However, the court is tasked with determining whether the ALJ's finding is supported by substantial evidence, not whether he might reasonably have made a different finding.  See Hicks v. Commissioner of Social Security, 2012 WL 2620542 (11th Cir. Jul. 6, 2012)(unpublished opinion)("Because we may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner, we must affirm a decision supported by substantial evidence, even if the proof preponderates against it.")(citations and internal quotation marks omitted).  At the February 2010 hearing, Dr. Durham noted plaintiff's treatment history for asthma and recurrent otitis media and testified that plaintiff does not meet or equal a listing.  (R. 540).  Upon evaluation of plaintiff's records in May 2008, agency physician Dr. Sullivan had reached the same conclusion.  (Exhibit 7F).  State agency physician Dr. Phillips also had reached the same conclusion in

_____

[14] Although the listing provisions on which plaintiff relies require evaluation of symptoms exhibited during a twelve-month period, most of the evidence plaintiff cites relates to asthma treatment that preceded the March 19, 2008 filing date of the present application by more than twelve months.  (See Listing 103.03, ¶¶ B and C(2)(quoted by plaintiff at Doc. # 10, p. 9); Doc. # 10 at p. 12 (including citations to R. 194-97, 214-19, 221, 226-28, 306-07, 335-36, 338 – evidencing treatment between March 2006 and November 2006 – to demonstrate "absence of extended symptom-free periods requiring administration of sympathomimetic bronchodilators every 4 to 6 hours" and citing evidence of "short courses of corticosteroids in July, September and December 2006); Doc. # 16, p. 4 n. 3)).  Much of the evidence plaintiff cites as to his treatment for chronic ear infections also predates the application filing date by more than twelve months. (See Doc. # 10, pp. 5-6).  Even assuming that the medical equivalence analysis allows stretching of this twelve month period to some extent, the listing requires evaluation of the frequency of symptoms.  Additionally, the plaintiff has attached a pharmacy printout to his brief to "evidenc[e] administrations of Veripred on November 17, 2010, February 10, 2011 and September 6, 2011." (Id., p. 12 n. 17 and Exhibit A).  Plaintiff does not contend that this evidence meets the standard for a "new evidence" remand under sentence six of 42 U.S.C. § 405(g), and the court concludes that it does not.  The court may not consider this evidence in its sentence four review of the Commissioner's decision.  See Ingram v. Commissioner of Social Security, 496 F.3d 1253, 1267-68 (11th Cir. 2007)(discussing court's review of evidence not previously presented to the Commissioner); Cherry v. Heckler, 760 F.2d 1186, 1193 (11th Cir. 1985)("A reviewing court is limited to [the certified record] in examining the evidence.").

November 2007.  (Exhibit 3F).  The ALJ observed, correctly, that "[n]o medical expert has concluded that the claimant's impairments meet or equal a listed impairment."  (R. 18).

Social Security Ruling 96-6p provides that "[f]indings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review."  SSR 96-6p ("Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence," Jul. 2, 1996).  The Ruling provides that the medical opinions of such consultants must be considered, and states that "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." Id.; see also 20 C.F.R. § 416.927(f)(2).  The ALJ is entitled to rely on opinions of non-examining sources when they do not conflict with those of examining sources.  Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991).  In the present case, no medical source – either examining or non-examining – has offered an opinion that plaintiff has an impairment or combination of impairments that meets or medically equals a listing.  While plaintiff contends that the expert medical opinions are inadequate to support the ALJ's conclusion (see Doc. # 16, pp. 6-8),

the treatment records cited by the plaintiff do not deprive the ALJ's finding of substantial evidentiary support. Plaintiff's contention that the ALJ committed reversible error in his "meets or medically equals" analysis is without merit.

The ALJ's Credibility Determination

Plaintiff argues that the Commissioner's decision should be reversed because the ALJ "issued an improper and unsupported credibility finding." (Doc. # 10, p. 13). In the Eleventh Circuit, a claimant's assertion of disability through testimony of pain or other subjective symptoms is evaluated pursuant to a three-part standard. "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" Dyer, 395 F.3d at 1210 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The standard also applies to complaints of subjective conditions other than pain." Holt, 921 F.2d at 1223. If this standard is met, the ALJ must consider the testimony regarding the claimant's subjective symptoms. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). Although the ALJ is required to consider the testimony, the ALJ is not compelled to accept the testimony as true; the ALJ may reject the claimant's subjective complaints. However, if the testimony is critical, the ALJ must articulate specific reasons for rejecting the testimony. Id.

The "Function Report - Child Age 1 to 3rd Birthday" completed on April 7, 2008 in

15

connection with plaintiff's present SSI application, when plaintiff was 2 years and 4 months old, indicates no functional limitations. (Exhibit 2E, R. 128-34).[15]  In an asthma questionnaire mailed to plaintiff's mother the following day and completed at some point thereafter, plaintiff's mother indicated that plaintiff has had asthma "[s]ince he was 4 months old."  She reported visits on October 1 and December 3, 2007 and on April 7, 2008 to Dr. Jerry Roy (plaintiff's "regular doctor") and to Dr. Gutierrez.  She reported hospitalization, treatment in a clinic, or treatment in an emergency room in January 2006, January 2007, and March 2008.  She indicated that plaintiff then took "[a] total of 6 puffs [a] day" of Advair and Albuterol, that he also took Singulair (a 4 mg tablet), and that he suffered no side effects from the medication.  (Exhibit 1E, R. 125).  Plaintiff's mother reported plaintiff's treatment by Dr. Alexandra Gutierrez of Children's Hospital in Birmingham for his asthma, by Dr. Wilton McRae for his ear infections, and by Dr. Jerry Roy for "all illnesses" and "check ups[.]"  (Exhibit 4E, R. 140).  She indicated that plaintiff was treated at the Crenshaw County Hospital emergency room in March 2008 for an ear infection, and that he was admitted to Troy Regional Medical Center in August 2007 and January 2008 for "tonsils and adenoids[.]"

---

[15] Plaintiff points out that the form is not signed by plaintiff's mother, and "[w]hether [she] filed ATF's supplemental security income application over the phone or in person is not disclosed in the record." (Doc. # 16, p. 2).  The "Disability Report - Field Office" completed on the same day as the function report indicates that it was completed by interviewer "T. Brown-Hayes[.]"  (Exhibit 3E, see R. 137).  However, plaintiff does not dispute that Exhibit 2E reflects the information his mother provided to the Disability Determination Service when she filed the present application for SSI.  (See Doc. # 16, pp. 1-2).  Plaintiff claims that the Commissioner, in his brief to the court, has "mischaracteriz[ed] the importance of the Function Report in Exhibit 2E." (Id., p. 1).  While the Commissioner's argument that "Plaintiff's mother has admitted that Plaintiff has no functional limitations as a result of his alleged impairments" (Doc. # 12, p. 6) does not reflect the record as a whole, the Commissioner's description of the  form – which speaks for itself – is accurate.  (See id., pp. 3, 12; Exhibit 2E).

(R. 141).

At the administrative hearing on February 8, 2010, when plaintiff was four years and two months of age, plaintiff's mother testified that plaintiff walks normally, dresses himself, feeds himself, has very good speech, is able to hear, has good vision, and sleeps "pretty good" with a humidifier in his room "to help him breath good through the night." (R. 535-36). She testified that plaintiff "has asthma" and "gets sick every once in a while." (R. 536). She stated that plaintiff takes medication for his allergies, which are worse in the winter, but that most of his medication is for his asthma. (R. 537). Plaintiff is in "Head Start." (R. 536). He likes to play football with his older brother. (R. 537). Plaintiff's mother testified that, "when he plays a lot he starts to throw up, so he can't play as often [] as the other kids. He takes Xopenex for that. I give it to him like every 30 minutes before exercise, and he has one at school He has to take one to school with him." (Id.). She also testified that she has to "put him on his machine like three to four times daily, give him two puffs of Advair, of the 230/21 daily. (R. 536). Plaintiff's mother testified that she had taken him to the emergency room in the preceding year, but could not remember the most recent time. She stated that she took him to his physician, Dr. Roy, on January 25th. Plaintiff was coughing "a whole lot." Dr. Roy "boosted [] up" his Advair prescription "a bit," prescribing the 230/21 dosage. Plaintiff's mother stated that, after Dr. Roy increased the Advair dosage, plaintiff "seemed to get better. The coughing stopped." (R. 538-39).

In the portion of the ALJ's decision explaining the weight he had accorded to the

various opinions of record regarding plaintiff's limitations, the ALJ noted that plaintiff's mother "is credible, but overall the claimant's limitations are not disabling." (R. 22). Accordingly, the ALJ gave little weight to the opinion of plaintiff's mother.[16] (Id.)(citing 20 C.F.R. § 416.913(d) and SSR 06-03p[17]). The ALJ, in assessing plaintiff's mother's statements regarding plaintiff's symptoms, wrote:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are only partially credible to the extent they are inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings for the reasons explained below. While the claimant has some limitations, the evidence documented above is inconsistent with the level of limitation noted by plaintiff's mother. For example, the claimant has been diagnosed with asthma and he is currently taking medication for this impairment. However, the record reflects that when he takes medications as prescribed and otherwise follows treatment recommendations, the symptoms and functional limitations are much less severe. The claimant experiences coughing and vomiting when he exerts himself too much, and his allergies are more prevalent in the winter, but he is not held out of any activities. Furthermore, the claimant's flare-ups are generally controlled with at-home treatment (Exhibits 6-F, 11-F, 12-F, 15-F and the hearing transcript).

(R. 20-21).

---

[16] As plaintiff argues, his mother – "by filing a supplemental security income application on April 7, 2008" – "asserted that ATF's combined medically determinable impairments caused him to be disabled[.]" (Doc. # 16, p. 1)(citing R. 110).

[17] As to "'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors," the Social Security Ruling provides that "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.'" SSR 06-03p, "Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies," 2006 WL 2329939, *6 (Aug. 9, 2006).

Plaintiff argues that "the ALJ's finding that [his mother's] testimony is only partially credible to the extent that ATF does not have an impairment that functionally equals a Listing does not seem to comport with a relevant inquiry as it relates to the Eleventh Circuit's pain standard and the evaluation of pain testimony." (Doc. # 10, p. 14). Plaintiff does not expand on this argument beyond this single sentence, and plaintiff's assertion of error is not at all clear. The ALJ determined that the evidence satisfied the pain standard – *i.e.* that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms." (R. 20-21; see Dyer, 395 F.3d at 1210, quoted *supra*). He then articulated the reasons for his conclusion that plaintiff's mother's allegations regarding plaintiff's subjective symptoms are only "partially credible[.]" (R. 21, quoted *supra*). The mode of analysis employed by the ALJ was that specified by the Eleventh Circuit for analyzing subjective complaints. Thus, the court concludes that the ALJ's credibility determination "comport[s] with a relevant inquiry" under the Eleventh Circuit's pain standard.[18]

Plaintiff further contends that the reasons stated by the ALJ for his credibility determination are not supported by the record. (Doc. # 10, pp. 14-15). He argues, specifically, that "the evidence .,. certainly does not show that when ATF takes his prescribed medications, his symptoms and functional limitations are much less severe. Moreover the evidentiary record also conflicts with the ALJ's purported reason that ATF's 'flare-ups are

---

[18] To the extent plaintiff objects to the wording chosen by the ALJ to state his finding – although it is not apparent to the court that plaintiff does so object – it is evident that the ALJ credited plaintiff's mother's allegations of symptoms, but not to an extent sufficient to find that plaintiff's limitations were severe enough to functionally equal those of a listed impairment.

generally controlled with at-home treatment[.]'" (Id., p. 14). Contrary to plaintiff's argument, the record contains substantial evidentiary support for the reasons articulated by the ALJ. (See Exhibits cited by ALJ after credibility assessment at R. 21 including, in particular, R. 317-23, 415-29).[19]

## CONCLUSION

Upon consideration of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and proper application of the law. Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the decision be AFFIRMED.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action.  The parties are DIRECTED to file any objections to this Recommendation on or before August 31, 2012.  Any objections filed must identify specifically the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual

---

[19]  Plaintiff was admitted to Troy Regional Medical Center on August 9, 2007, for two days for viral syndrome croup and a mild exacerbation of post-bronchiolitic reactive airway disease.  (Exhibit 1F, R. 169-82; see also Exhibit 9F, R. 383-88).  His other hospital admissions were for ENT surgery. (See Exhibits 1F, 5F, 8F, 9F).

findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 17th day of August, 2012.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE